THE STATE OF NEW JERSEY *v.* THE UVALDE ASPHALT PAVING COMPANY, PROSECUTOR.

Submitted July 3, 1902—Decided November 10, 1902.

1. In an indictment charging the defendant with the offence of nuisance caused by the carrying on of an offensive trade within a city, the pleader is not required to designate the place where the offence was committed further than to allege that it was committed within the city and county over which the court has jurisdiction.

2. The pleader is required, however, to set forth, with reasonable certainty, the essential ingredients of the offence, including averments showing that the nuisance was a public one, and that its noisome effects reached the public highways or dwelling-houses of the citizens of the city.

3. Where it is charged that, by reason of the noxious and unwholesome exhalations emitted from a building within the city and carried by the wind in, over and upon the city, the air therein was rendered corrupt and very insalubrious, it will be assumed, without further averment, that the nuisance existed near the highways and dwellings of the city.

4. A count charging that the offensive trade is being conducted in, upon and about a certain building and other structures in the said city of J. C., operated, managed and controlled by the defendant, there situate and near divers public streets and highways known as G. street and E. street, in said city, and also near the dwelling-houses of divers good citizens of the state, then and there inhabited by good citizens of the state, was held a sufficient averment of the location and public character of the nuisance.

. On *certiorari.* Motion to quash indictment brought up from the Hudson Quarter Sessions.

Before Justices DIXON, HENDRICKSON and PITNEY.

For the prosecutor, *Corbin & Corbin.*

For the state, *James S. Erwin,* prosecutor of the pleas.

The opinion of the court was delivered by

HENDRICKSON, J. This is a motion to quash an indictment removed from the Hudson Quarter Sessions by *certiorari.*

The indictment charges the defendant, a corporation, with causing and maintaining a nuisance at Jersey City, in the county of Hudson, in this state, on divers days and times between April 1st, 1901, and the time of taking the inquisition. It alleges that the nuisance arises from the business of the defendant which is the manufacture and refining of asphalt; that in the process of manufacture the defendant boils, melts and mixes in certain cauldrons, boilers and other vessels large quantities of asphaltic cement, carbonate of lime, residuum oil of petroleum and other materials from which arise noisome, noxious and unwholesome smokes, vapors, smells and stenches which impregnate the air, rendering it corrupt, offensive and unwholesome to the common nuisance, &c. The indictment consists of five counts varying somewhat in form, but charging substantially the same offence.

No criticism is made upon the language in which the pleader has embodied the nature and character of the particular nuisance charged. It is claimed, however, that the several counts of the indictment are fatally defective in failing (1) to show that the alleged nuisance was committed in a public place; (2) to state definitely where the nuisance was committed; (3) to show particularly what citizens or persons were damaged. In reviewing these reasons, on which the motion to quash is based, I will take them up in the order named and consider the second, third, fourth and fifth

counts together. In the second count the place of manufacture is described as "in, upon and about a certain large building and other structures, messuages and tenements, and the appurtenances thereto, in the said·city of Jersey City, operated, managed and controlled by the said" defendant, there situate and near divers public streets and highways, known as Green street and Essex street, in said city of Jersey City, and also near the dwelling-houses of divers good citizens of this state then and there inhabited, &c. Then follows the charge of erecting and maintaining the cauldrons, boilers and other vessels, and the using of them in the manufacturing processes above described in said building at Jersey City aforesaid; and then the indictment proceeds: by reason of which said premises divers noisome smells, &c., "on the days and times aforesaid were thence emitted and issued, so that the air," &c., at the city of Jersey City aforesaid was rendered and became corrupt, &c., to the common nuisance of all the good citizens of this state there inhabiting and residing, and in, through and along the said public streets and highways, going, returning, passing and repassing, &c. We think the language here abstracted does show that the nuisance was committed in a public place. The argument of the prosecutor is, that while this count alleges that the furnaces, boilers, &c., were erected near divers public streets, naming them, and near dwelling-houses, yet that when it says that noisome smokes, &c., were thence emitted, nothing is said as to place; and that when it says that the air at the city of Jersey City was corrupted, &c., it fails to allege that the nuisance was committed in a, public place. We find ourselves unable to concur in this view. We think the word "thence" clearly connects the language as to emitting the noisome smells, &c., with the furnaces, boilers, &c., and that the fair meaning of the language of the count is that the air in and along the public streets and highways named became corrupted, offensive, &c.

In considering the contention secondly made that the counts do not state definitely where the nuisance was committed, we should have regard to the fact that in criminal

pleading the setting out of the exact place where the offence was committed, except where it was local in character, such as arson, burglary, &c., is unnecessary. So that the offence is alleged to have been committed within the county over which the court has jurisdiction, it has been held from a very early period to be sufficient. *Whart. Cr. Pr. & Pl.* (*9th ed.*) 139. But even in local offences such as I have named, where the building involved is an essential element of the crime, it is only necessary to aver that the building in which the crime was committed is a dwelling-house of a certain person, be he owner or occupant, there situate—that is, situate within the venue laid in the indictment. Now the offence of nuisance arising from the carrying on of an offensive trade is not local in the sense here stated. Neither the location of the buildings nor the buildings themselves, with the furnaces and cauldrons therein contained, are essential ingredients of the offence charged. They are only matters of inducement, and may be stated in general terms and without the certainty required in stating the gist of the offence. *Whart. Cr. Pr. & Pl.* 151, 165.

It is, however, necessary in this as in other criminal offences that the indictment should set forth the essential ingredients of the offence with reasonable certainty. It is essential that it should appear to be a public nuisance and one that was an annoyance to the citizens of the state generally, and hence that its noisome effects reached the public highways or the dwelling-houses of citizens. But it is not essential that the particular street or the particular place in the street where the nuisance exists should be stated. For instance, in an indictment for an affray, the offence must be alleged to have been committed in a public place, but the place need not be further described than by alleging it to be a public one. Nuisance is one of the common law offences which, though made punishable by our statutes, is not therein particularly defined. In order to discover its material ingredients we must look largely to that ancient body of the law as embodied in the adjudications and in books of the early commentators. In framing the language of the second

count, as above recited, and in the following counts, the pleader has followed substantially the old English form of such an indictment found in 2 *Arch. Cr. Pr. & Pl.* (*Waterman, 7th ed.*), except that in the English form the nuisance is located as being "near unto a certain public and common highway, in the parish of ———, in the county of ———," &c., without giving the name of any street or highway. In 1 *Russ. Cr.* (*9th ed.*) 436, it is stated that an indictment for a nuisance of this character, laying it to be committed near the highway and also near several dwelling-houses, has been held sufficient, the author adding: "For if a man erects a nuisance near the highway by which the air thereabouts is corrupted, it must, in its nature, be a nuisance to those who are in the highway," citing *Rex* v. *White,* 1 *Burr.* 333, and *Rex* v. *Pappinean,* 1 *Str.* 686; see, also, *Arch. New Cr. Pr.* 205; 2 *Whart. Prec. Indict. & Pl.* 705, and 2 *Bish Cr. Pro.* 820; also *Commonwealth* v. *Brown,* 13 *Metc.* 365; *State* v. *Sneed,* 16 *Lea* 450, where this form of indictment is approved.

The form of the indictment for a public nuisance in erecting a building in the highway in *State* v. *Morris and Essex Railroad Co.,* 3 *Zab.* 360, is of the same general character as the one under consideration, although the question in that case did not involve the form of the indictment. It is argued that, granting the general form here alluded to to be correct, yet that an allegation "near Green street and Essex street" is not definite or proper pleading; that, for all that appears, these streets may be miles in length and that the two may be widely apart from each other as the opposite sides of the city; but the allegation is that the building is near both of the streets mentioned, and that proposition would not seem to be consistent with any other conclusion than that the streets named must cross each other and that the building named is near their intersection. This is a question to be made clear by the proofs at the trial, and if there is a variance the defendant may take advantage of it. And upon the question of indefinite description there is the further allegation to be considered that the buildings are operated, managed and con-

trolled by the defendant. It is further argued that the allegations that "the air there for great distances thereabouts" was infected, &c., and that other similar allegations in the various counts are too indefinite; that the word "there" might refer to the place described "as near Green street and Essex street," but it might also refer to Jersey City or Hudson county or the State of New Jersey or even to territory outside of the state. But again we think the language referred to is not fairly open to this criticism. The allegation in substance is that at the place of manufacture previously described the boiling and melting processes were carried on in the cauldrons there situate, by reason whereof the smokes and smells complained of were emitted and issued, corrupting the air there for great distances thereabouts or for a great distance around. This language refers quite plainly, we think, to the building and premises described, about which for great distances the air became corrupt, &c.

Under the third point it is argued that the conclusions of the several counts, some of them in these words: "to the great damage and common nuisance of all the good citizens of this state there inhabiting and residing, and in, through and along the said public streets and highways going, returning, passing and repassing" are too indefinite; that the word "there," as used, might well mean any citizens of this state inhabiting the state. But we think these words, taken in connection with the whole count, refer with sufficient certainty to citizens of Jersey City inhabiting the dwelling-houses and frequenting the highways of said city previously described. We find the same result in this particular as to all the counts. It remains to consider the validity of the first count upon the points other than the one just discussed. The only material differences between this count and the other counts are—*first,* that it charges the putting and placing the offensive substances in certain buildings and the appurtenances in said Jersey City, county of Hudson, &c., for the purpose of manufacturing, &c., without further describing the location of the building and appurtenances mentioned as being near the public highways of said city, or near any dwelling-houses there

inhabited, &c.; and *secondly,* that after the noisome smokes, smells, &c., were emitted and issued, &c., it charges that they were and still are carried by the wind in, over, upon, into and across the county of Hudson at Jersey City aforesaid, whereby the air within said city, &c., was and is greatly impregnated with many noisome stinks, stenches, &c., and has been and still is corrupted, &c. The contention is that there is a failure in this count to show that the offence charged was committed in a public place. There is an omission to describe in direct terms, at least, the buildings as being near public highways and near dwelling-houses as in the other counts. But we do not regard this omission as fatal to the count. When the indictment sets forth in apt and proper language, as in this count, the carrying on of an offensive trade or business within a city, and that by reason of the noisome, noxious and unwholesome smells and stenches, &c., emitted therefrom and carried by the wind, in, over and upon the city whereby the air within such city, by means of said smells and stenches so emitted and sent forth and so carried by the wind, has become filled and impregnated therewith and rendered corrupt and very insalubrious, we think it sufficiently appears, without further averment, that the alleged nuisance existed near the streets and highways of the city and near the dwelling-houses.

The court will assume, without special averment, that a city has streets and inhabitants. In the case of *Canal Co.* v. *Commonwealth,* 60 *Pa. St.* 367, which was an indictment for allowing water to escape through the bank of the towpath and form stagnant pools on adjoining land, it was held that averring that a nuisance is within a borough is a sufficient averment of its being in the neighborhood of dwellings. Counsel has cited in support of the proposition that the failure to describe the location of the nuisance with certainty is fatal, the cases of *State* v. *Stewart,* 66 *Ind.* 555; *State* v. *Crumpler,* 88 *N. C.* 647, and *Wood* v. *State,* 5 *Ind.* 433. In the first two named the indictment was for obstructing a highway, and in the last for maintaining a mill-dam across a stream

of water called the Elkhart river. In these cases it was held that the location of the obstructions must be described with certainty. We think these cases are clearly distinguishable; the streets and stream thus obstructed were involved as essential elements of the offence charged, and, upon the principle heretofore stated, must be described with reasonable certainty. The other points of objection to the first count have been covered in the discussion of the other counts. The result is that the motion to quash is denied. The same result has been reached upon the motion to quash the indictment in the case of State *v.* John S. Marston and others, the issue involved being the same in the two cases, which were argued together. The indictment will be returned to the Hudson Quarter Sessions for trial.